T.C. Summary Opinion 2007-48


UNITED STATES TAX COURT


ROBERTSON STRONG & APGAR ARCHITECTS, PC, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12504-05S.          Filed March 26, 2007.


Lawrence Apgar (an officer), for petitioner.

<u>John Janusz</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion should not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court

Rules of Practice and Procedure.

Respondent determined deficiencies in petitioner's Federal income taxes for taxable years 2002 and 2003 in the amounts of $10,021.60 and $11,841.60, respectively. The issue for decision is whether petitioner was a personal service corporation in the tax years in question and accordingly subject to a special flat tax rate of 35 percent.

Background

This case was submitted fully stipulated pursuant to Rule 122. The stipulation of facts and the attached exhibits are incorporated herein by reference. At the time the petition was filed, petitioner's place of business was in Syracuse, New York.

Petitioner filed a Form 1120, U.S. Corporation Income Tax Return, for the taxable years 2002 and 2003.

At all times during 2002 and 2003, petitioner was incorporated under the laws of New York. Petitioner's shares at the end of both of the years at issue were held as follows:

| | |
|---|---|
| Lawrence Apgar | 122 shares |
| James Oliver | 50 shares |
| Treasury shares | 172 shares |

On Schedule E[1] of the Form 1120, however, filed for taxable

---

[1] Schedule E, Compensation of Officers, of Form 1120 requires the corporation to provide certain information, including the names of officers, and the percentage of corporation stock owned by each officer.

years 2002 and 2003, petitioner indicated that its sole officers, Lawrence Apgar and James S. Oliver, owned 70.5 percent and 29.5 percent, respectively, of all of the outstanding common stock of the corporation. Petitioner acquired outstanding shares of its stock sometime in 2002. According to the Schedule L, Balance Sheets per Books, of Form 1120 filed for taxable year 2002, petitioner's cost of treasury stock was $40,666 at the beginning of 2002 and was $53,999 at the end of 2002. When these acquired shares were added to the shares already held by petitioner as treasury stock, the total number of shares was 172. Petitioner's cost of treasury stock on its Schedule L of Form 1120 for 2003 was the same for the beginning and end of that year, $53,999.

## Discussion

In general, for Federal income tax purposes, corporations are taxed at graduated income tax rates. Sec. 11(b)(1). So-called qualified personal service corporations as defined in section 448(d)(2), however, are taxed at a flat 35-percent income tax rate. Sec. 11(b)(2). The term "qualified personal service corporation" is defined in section 448(d)(2). A corporation will be considered a qualified personal services corporation if it meets two tests: a function test and an ownership test. Sec. 448(d)(2)(A) and (B). Section 448(d)(2)(A) defines the function test as where "substantially

all of the activities of which involve the performance of services in the fields of * * * architecture."  In this case, petitioner and respondent agree that petitioner's business satisfies the function test.  With regard to the ownership test, respondent contends that petitioner also satisfies the ownership test; petitioner disagrees.

Section 448(d)(2)(B) defines the ownership test as where:

> (B) substantially all of the stock of which (by value) is held directly * * * by–
>
> > (i) employees performing services for such corporation in connection with the activities involving a field referred to in subparagraph (A)

In interpreting the ownership test of section 448(d)(2)(B), section 1.448-1T(e)(5)(i), Temporary Income Tax Regs., 52 Fed. Reg. 22768 (June 16, 1987), as amended by T.D. 8329, 56 Fed. Reg. 485 (Jan. 7, 1991), and T.D. 8514, 58 Fed. Reg. 68299 (Dec. 27, 1993), further provides:

> A corporation meets the ownership test, if at all times during the taxable year, substantially all of the corporation's stock, by value, is held, directly or indirectly, by–
>
> > (A) Employees performing services for such corporation in connection with activities involving a field referred to in paragraph (e)(4) of this section,
>
> > *       *       *       *       *       *       *
>
> For purposes of this paragraph (e)(5), the term "substantially all" means an amount equal to or greater than 95 percent.

Petitioner argues that the treasury shares should be taken into consideration when applying the percentage ownership test as set forth in section 448(d)(2)(B) and section 1.448-1T(e)(5)(i), Temporary Income Tax Regs., supra. Under petitioner's argument, percentage of ownership would be as follows:

| | |
|---|---|
| Lawrence Apgar | 35.5 percent |
| James Oliver | 14.5 percent |
| Treasury shares | 50 percent |

Petitioner maintains that although the treasury shares were not outstanding shares, they nonetheless had a "contra value"[2] of $53,999 at the end of its 2002 and 2003 taxable years. Accordingly, says petitioner, due to this "value", the shares should be considered as held by "by value" pursuant to section 44(d)(2)(B) and therefore included when applying the ownership test as described in section 1.448-1T(e)(5)(i), Temporary Income Tax Regs., supra.

Petitioner's rationale may be summarized as follows: First, petitioner argues that it should not be bound for

---

[2] We are unclear as to petitioner's use of the term contra value. Petitioner appears to concede that although the treasury shares are not outstanding equity per se to the corporation, that they nonetheless have a value (contra value), based on what petitioner paid to its shareholders upon acquisition of the shares. We believe that petitioner may be mistakenly interchanging its concept of contra equity with the term contra equity account.

purposes of determining ownership under section 448(d)(2)(B) by the shares listed on Schedule E of Form 1120, as that Form only solicits information regarding the ownership of stock by officers of the corporation in relationship to each other and not the corporation's full stock-ownership profile.  Second, petitioner argues that its treasury shares should be characterized as "by value" pursuant to section 1.448-1T(e)(5)(i), Temporary Income Tax Regs., supra, because under New York law, the shares were acquired and retained by the corporation, and the amount that they were acquired for ($53,999) establishes a present value to the corporation.  We disagree.

Petitioner's argument that it did not include treasury shares on Schedule E of the Form 1120 because Schedule E only asks for shares held by corporation officers "in relation to one another" is incorrect and meritless.  While Schedule E does solicit information with respect to the shares held by officers, it clearly asks in sections (d) and (e) for the percentage of total corporation stock owned by each officer.  The corporation is asked to provide the percentage of the total stock owned by the officers and not, as petitioner argues, the percentages of stock each owns in relationship to the other.  Accordingly, petitioner correctly indicated on its Forms 1120 for 2002 and 2003 that Mr. Apgar and Mr. Oliver together owned 100 percent of

the corporation's outstanding stock.  If petitioner intended the treasury shares to be included in the total shares of corporation stock listed on Schedule E, then it would have listed the percentages owned by Mr. Apgar and Mr. Oliver accordingly.  For example, petitioner alleges that the total number of common stock shares was 344, with Mr. Apgar holding 122 shares, Mr. Oliver holding 50 shares, and each then owning 35.5 percent and 14.5 percent of the total shares, respectively. Petitioner, however, did not indicate these ownership percentages on its Schedule E for either 2002 or 2003.

Petitioner next argues that it indicated the percentages of each officer's stock ownership in relation to the other because the directions attached to Schedule E require that it list "the deductible part of each officer's compensation".  This argument, however, has no relationship to the percentage of stock owned by the officers but rather deals exclusively with the total compensation of officers as indicated on Schedule E, section (f).  Accordingly, we cannot conclude that there is merit in any of petitioner's arguments with respect to its completed Schedules E.

Petitioner next argues that the 172 shares of treasury stock should be factored into the ownership test as described in section 448(d)(2)(B) and section 1.448-1T(e)(5)(i), Temporary Income Tax Regs., 52 Fed. Reg. 22766 (June 16, 1987), as the

shares held a 'contra value' to petitioner in both tax years of $53,999.  We disagree.

New York Business Corporation Law sec. 102(a)(14) (McKinney 2003) defines treasury shares as: "shares which have been issued, have been subsequently acquired, and are retained uncancelled by the corporation.  Treasury shares are issued shares, but not outstanding shares, and are not assets."

Petitioner argues that even though it purchased the acquired shares, and the shares remain uncanceled, they nonetheless have a 'contra value', and, while not assets, the shares are still held "by value" in accordance with section 448(d)(2)(B) and section 1.448-1T(e)(5)(i), Temporary Income Tax Regs., supra.  We disagree with petitioner's creative characterization of its treasury shares.

Treasury stock, while held by a corporation, has no value. Christie v. Fifth Madison Corp., 211 N.Y.S.2d 787, 796 (App. Div. 1961).  Treasury stock has no value because it carries no voting rights, rights to dividends, or rights to distributions. Id.  Treasury shares are actually a legal fiction and a figure of speech only used to explain the rights and rules that apply upon their reissue.  Id. at 796. Treasury stock, therefore, is not an "asset" of the corporation.  Its only value is what petitioner might receive in consideration for its reissuance. In this case, when petitioner acquired its stock, the stock

could be reissued for consideration (i.e., cash), and the cash would increase its assets and the reissued shares would be reflected in an increase in its shareholder equity.

Most importantly, contrary to petitioner's assertion, the acquisition of treasury stock is actually a contraction of corporate capital.  Specifically, in this case, when petitioner reacquired shares in 2002, the total cost of its treasury stock was $53,999.  On the Schedule L balance sheets for 2002 and 2003, petitioner correctly subtracted $53,999 from its retained earnings.  This calculation was done because when stock is reacquired by a corporation there is a necessary and corresponding reduction in retained earnings and shareholder equity.  The treasury stock is held in a contra equity account, so named because it <u>reduces</u> total shareholder equity in the corporation.  Only a subsequent resale of treasury stock would result in an expansion of shareholder equity.  It follows then that because treasury stock has no value if and until it is resold, that it is not held "by value" per section 448(d)(2)(B).

In this case, the only stock which was held "by value" is the stock owned by Mr. Apgar and Mr. Oliver.  Because Mr. Apgar and Mr. Oliver are petitioner's employees, and as they together hold 100 percent of petitioner's stock, petitioner meets the ownership test defined in section 1.448-1T(e)(5)(i), Temporary Income Tax Regs., <u>supra</u>.

Finally, we note that because New York corporation law provides that petitioner, a professional service corporation engaged in architectural services, may issue shares only to individuals who are licensed architects in New York State, we suspect that the treasury shares at the heart of this case were reacquired by petitioner from Mr. Apgar and Mr. Oliver for the purpose of circumventing the ownership test of section 448(d)(2)(B) and hence, avoiding application of the 35-percent flat tax.  N.Y. Bus. Corp. Law sec. 1507 (McKinney 2003). Accordingly, we sustain respondent's determination.

Decision will be entered

for respondent.